# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55615-4-II |
| Respondent, | |
| v. | |
| CORY MICHAEL CALDWELL, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Caldwell appeals his conviction for second degree assault of a child, arguing that he received ineffective assistance of counsel. Although defense counsel's performance was deficient, Caldwell was not prejudiced by the deficient performance. Therefore, Caldwell's ineffective assistance of counsel claim fails. We affirm.

## FACTS

Sara Stacy was living in a motel with Caldwell and her five children, including D.R.M., who was nine years old. D.R.M. is autistic and has attention deficit hyperactivity disorder. In September 2020, law enforcement and child protective services took D.R.M. into protective custody because of concerns regarding his nutrition.

After being taken into protective custody, D.R.M. participated in a forensic interview. During the forensic interview, D.R.M. made allegations of abuse. The State charged Caldwell with second degree assault of a child against D.R.M.

Prior to trial, Caldwell filed a motion in limine to preclude the State from bringing up Caldwell's other disciplinary actions against D.R.M. or the other children. The State agreed to the motion, and the trial court granted the motion. The case proceeded to a jury trial.

At trial, D.R.M. testified that Caldwell choked him by grabbing him by the neck and squeezing. It was difficult for D.R.M. to breathe and he kept trying to wiggle away. Cory released D.R.M. after D.R.M. said he was sorry multiple times. D.R.M. also testified that Caldwell looked angry while he was holding D.R.M. by the neck.

Stacy testified that, prior to the incident, D.R.M. had been crying because one of his siblings took his teddy bear. When D.R.M. would not stop crying, Caldwell picked him up off the ground by his neck. Caldwell was holding D.R.M. about a foot off the ground. Stacy testified that D.R.M. was crying, kicking his feet, and saying that he could not breathe. The next day Stacy observed two small bruises on the left side of D.R.M's neck.

During Stacy's testimony, the State asked if Stacy told a doctor about the incident. Stacy said she did not because she was scared. Caldwell objected, and the trial court sustained the objection and instructed the jury to disregard Stacy's answer.

Caldwell cross-examined Stacy, focusing on whether she was concerned about the injuries caused by the incident. Caldwell specifically asked Stacy if she called a doctor about the incident. Stacy admitted she did not contact a doctor about the incident.

After cross-examination, the State informed the court that Stacy had stated in an interview that day that she did not disclose the incident because she was afraid Caldwell would take it out on the other children. The State sought permission to ask Stacy about the reason for failing to disclose the incident on redirect. Caldwell argued that it was improper but stated he would defer to the court. The trial court ruled that the State could ask Stacy about why she failed to disclose

the incident because it was directly addressed in cross-examination. During redirect, the following exchange took place:

> [STATE:] Okay. Now, you were also asked by [Caldwell's counsel], you didn't take [D.R.M.] to the hospital or tell anyone about this?
> [STACY:] Correct.
> [STATE:] And why not?
> [STACY:] I was worried what would happen to my other kids if the defendant found out.
>
> . . . .
>
> [STATE:] What did you fear would happen?
> [STACY:] He would take his anger out on my other kids.

1 Verbatim Report of Proceedings (VRP) (Mar. 1, 2021) at 154-55.

Corissa Beairsto, a CPS investigator, testified that she was present during D.R.M.'s forensic interview. Beairsto testified that after the interview, CPS filed a dependency petition for one of D.R.M.'s siblings and contacted law enforcement regarding D.R.M.'s disclosures. Caldwell did not object. When asked if Beairsto spoke with Caldwell about D.R.M.'s allegations, Beairsto responded, "I interviewed [Caldwell] regarding [D.R.M.'s] disclosures of being choked by [Caldwell], as well as other disclosures regarding physical abuse." 1 VRP (Mar. 1, 2021) at 187.

Caldwell moved for a mistrial based on Beairsto's testimony that D.R.M. made other allegations of abuse against Caldwell. The trial court denied the motion for a mistrial, stating that as long as the other allegations were not addressed further, there was no prejudice.

Officer Alan Hitchcock of the Centralia Police Department testified he was present when Beairsto interviewed Caldwell. Hitchcock testified that Caldwell told Beairsto that he never choked the children, "but he had hit them and disciplined them." 1 VRP (Mar. 1, 2021) at 161. Caldwell did not object to Hitchcock's testimony.

3

Caldwell testified that D.R.M. had been crying for 45 minutes to an hour at the time of the incident. Caldwell also testified that he grabbed D.R.M. by the waist and chest and pushed him up against the wall to get D.R.M. to stop crying. Caldwell explained that D.R.M. was able to breathe and speak while being held against the wall. Caldwell testified that he did not intend to cut off D.R.M.'s air supply and only wanted to get D.R.M. to stop crying. Caldwell also explained that he was concerned about D.R.M.'s crying because he did not want to get kicked out of the motel.

The trial court instructed the jury that to convict Caldwell of second degree assault of child, the State had to prove that Caldwell assaulted D.R.M. by strangulation. The trial court also instructed the jury on fourth degree assault as a lesser included offense. The trial court further instructed the jury that reasonable parental discipline was a defense to assault. The instructions stated that the jury may, but was not required to, infer that interfering with a child's breathing is unreasonable.

During closing argument, Caldwell argued that he was not guilty of second degree assault because he did not intend to strangle D.R.M. Caldwell also argued that his actions were reasonable because he was concerned about getting kicked out of the motel and he was just trying to get D.R.M. to stop crying. Caldwell further argued that Stacy admitted that there was no injury to D.R.M. and she was not concerned about the incident. Specifically, Caldwell argued:

> The next day Ms. Stacy said there were a couple little bruises right here, and it lasted for two days. She didn't call the doctor; she didn't take him to the doctor.
> Now, the State's trying to assert that, you know, it's because of my client and fear for him, but then she admitted she was concerned about the malnutrition for [D.R.M.], which is ultimately why he was taken. So her motive wasn't as altruistic as she would make you think.

1 VRP (Mar. 2, 2021) at 247.

4

The jury found Caldwell guilty of second degree assault of a child. The trial court imposed a standard range sentence of 31 months confinement.

ANALYSIS

Caldwell argues that he received ineffective assistance of counsel because defense counsel committed multiple errors resulting in the jury hearing evidence of abuse allegations regarding Stacy's other children. We disagree.

A.     LEGAL PRINCIPLES

A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). We review ineffective assistance of counsel claims de novo. *State v. Lopez*, 190 Wn.2d 104, 116-17, 410 P.3d 1117 (2018).

To prevail on an ineffective assistance of counsel claim, a defendant must establish that counsel's performance was deficient and that counsel's deficient performance prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. If a defendant fails to establish either prong of an ineffective assistance of counsel claim, the claim fails. *Id.* at 33.

B.     DEFICIENT PERFORMANCE

Counsel's performance is deficient if it falls "'below an objective standard of reasonableness.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). We engage in a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant can overcome the presumption of reasonableness by showing that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Id.* at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130,

5

101 P.3d 80 (2004)). If counsel's conduct can be characterized as a legitimate trial strategy or tactic, then counsel's performance is not deficient. *Id.* at 33. However, the relevant focus is whether defense counsel's actions were reasonable, not simply whether they were strategic. *See State v. Vazquez*, 198 Wn.2d 239, 255, 494 P.3d 424 (2021) ("'The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'") (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)).

Here, defense counsel was deficient for not objecting to various testimony that violated the pretrial motion in limine ruling, which precluded testimony about Caldwell's other disciplinary incidents involving Stacy's children. Stacy's testimony that she did not tell a doctor about the incident because she was scared was otherwise inadmissible—as demonstrated when the trial court initially sustained the objection and struck Stacy's first testimony regarding being afraid of reporting. The testimony was only permitted because defense counsel opened the door by asking questions intended to minimize the seriousness of the incident. Although this may have been strategic, a strategy that allows inadmissible evidence is not reasonable. *See Id.* at 254-55 (holding defense counsel's failure to object to defendant's inadmissible prior convictions in order to try to portray defendant as drug user rather than drug dealer was not reasonable).

Further, Beairsto's and Hitchcock's testimony was also inadmissible. Defense counsel was aware that Beairsto's testimony about D.R.M.'s other allegations of abuse was inadmissible because he moved for a mistrial. However, defense counsel did not attempt to have the court instruct the jury to disregard Beairsto's testimony. And defense counsel did not object to Hitchcock's testimony at all. Hitchcock's references to Caldwell's admission that he had hit and disciplined the children were inadmissible under the trial court's ruling on the Caldwell's motion in limine. Failing to object to clearly inadmissible evidence is not reasonable because it would not

contribute to the trial strategy of attempting to minimize the incident as minor discipline. *See Id.* at 258 (holding failure to object to inadmissible evidence was not reasonable because the evidence was counter to defense counsel's trial strategy).

Because defense counsel's actions allowed inadmissible testimony to be presented to the jury and were not reasonable strategic decisions, defense counsel's performance was deficient.

C.     PREJUDICE

Although defense counsel's performance was deficient, it was not prejudicial. To establish prejudice, the defendant must "prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862.

"A person is guilty of assault in the second degree if he . . . [a]ssaults another by strangulation or suffocation." RCW 9A.36.021(1)(g). "'Strangulation' means to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe." RCW 9A.04.110(26).

Here, there were two issues at trial: whether Caldwell strangled D.R.M. and whether his actions were reasonable parental discipline. The inadmissible evidence presented at trial had no reasonable probability of affecting the jury's determination on either issue. First, none of the inadmissible evidence indicated that Caldwell had strangled D.R.M., or any of the other children, prior to this incident. Therefore, whether Caldwell strangled D.R.M. was a credibility issue between D.R.M.'s and Stacy's testimony that Caldwell was holding D.R.M. by the neck, and Caldwell's testimony that he was pushing D.R.M. into the wall by his chest. Because D.R.M. clearly testified that Caldwell was holding him by the neck, squeezing, and making it difficult to breathe and Stacy observed bruising on D.R.M's neck the next day, there is no reasonable

probability that the outcome of the trial would have been different if the inadmissible evidence had not been presented to the jury.

Further, although the inadmissible testimony indicated that there were other allegations of abuse, there is not a reasonable probability that this evidence affected the jury's determination that this was not reasonable parental discipline. Caldwell admitted that he pushed D.R.M., a nine-year old autistic child, into a wall for crying when his teddy bear was taken. And Caldwell's actions left bruises on D.R.M.'s neck. No reasonable jury would find that Caldwell was engaged in reasonable parental discipline. Vague references to fear or other allegations of discipline, without any specifics related to strangulation, did not have a reasonable probability of affecting the jury's verdict in this case.

Because there was no reasonable probability that the inadmissible evidence in this case affected the outcome, Caldwell cannot meet his burden to show prejudice. Therefore, Caldwell's ineffective assistance of counsel claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J.

Veljacic, J.